Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Welcome to our final day of oral argument this week before this panel. Our first case up is United States v. Isaac. We'll hear first from Mr. Taylor, the attorney for the appellate. May it please the court. My name is Charles Taylor. I represent Mr. Keneon Isaac. This case centers around the first issue of the Fourth Amendment right. The second centers around incorrect calculation of the guidelines. First issue, the court committed error when it denied the motion to express based on a first warrant obtained to an illegal inventory search. This was a search incident to arrest disguised as an inventory search because the officers were looking for evidence of a cell phone with cracks. You don't question the validity of the arrest, do you, Mr. Taylor? No, your honor. Okay, so they had arrested him and what are they to do with the car? Well, your honor, the car was parked on private property. If you take a look at their policy, your honor, policy states for the authority to tow the vehicle. One second, your honor. It indicates that the vehicle which is left upon any bridge, causeway, or viaduct, it says when a number three, when a vehicle is operated on a street, not in proper condition, four, when any vehicle is on a street illegally parked, five, when a vehicle is on any street. But then when you get to number six, it states when the driver of such vehicle is taken into custody. Well, the such vehicle language, that's the first time it was used. So it must be referring to paragraph one through five, the vehicles on public property, because if they wanted it to apply to public and private streets. So if somebody's vehicle is parked in the middle of a yard that doesn't belong to them, let's say DUI or drug chase or whatever, and they end up on somebody else's private property, and the officers arrest the driver, they can't have that vehicle towed? No, your honor, I'm not saying that. In that particular case, you're absolutely correct. If it's a DUI case, then they can have it towed. It's not a DUI case. It's the same thing we had in this case. But the car was parked in the middle of a private property, somebody's front yard that was not related in any way to the driver arresting. That is correct, your honor. However, if you take a look at all of the inventory search case law that's out there, South Dakota v. Opperman, the car was parked on a public road for violation of parking ordinance. That doesn't mean it has to be parked on a public road. Suppose it's parked on a private road, but it's blocking a tractor trailer or a truck who needs to get out of there. Suppose it's a Mercedes Benz in a very high crime neighborhood. Well, your honor, in regards to their policy, the policy indicated if the vehicle is parked or abandoned on private property, that they must do certain things, such as contact the owner of the property, which in this case, they didn't either. Counsel, you're referring to subsection D, subsection eight of the policy. But you skipped over six, and six seems to be the exact situation we have here. And as I understood, you even argued that six applied to the trial court, although you had a different interpretation of it. Six suggests that when a driver is taken into custody, which is what happened here, and such vehicle would thereby be unattended, which is exactly what happened here, then one of two things must happen. One, all reasonable efforts to provide the vehicle driver with alternatives to impoundment have been unsuccessful. In other words, you have to see if they can have an alternative. Or that is impractical due to time or staffing constraints. Didn't the trial court make a finding that it was in fact impractical under the facts of this case? Yes, your honor, the trial court did do that. However, the agent indicated that because of time, I think it was around 1145. However, they were able to call and wait for a tow truck. So if they were able to do that, they could have given my client an opportunity to call someone to basically come get the vehicle itself. Well, they waited for the tow truck. First of all, I mean, let's back up a little bit. As I understand it, when a trial court makes a finding, that finding is reviewed by us on a suppression motion by clear error. I think your brief makes that point. If there is evidence to support that there were no other officers available to stay with the car if it had been significantly longer, all the other officers had to go to their duty stations. Further investigation needed to be done in the case. It was late. It was a high crime neighborhood, so the officer didn't want to leave the car for any length of time that's there. And as I think Judge Carnes referred to, it was a tractor-trailer driver needed to leave. Don't all those facts indicate that the impracticality part of the policy was triggered? No, I do not believe so, Your Honor, because what the agent indicated was that he needed to get back to the office to interview my client. As it relates to the vehicle having to be parked on private property, so in that particular case, we would argue that they would have had to get in contact with the property owner as number eight states. However... But counsel, number eight refers to when a car is parked or abandoned on private property. Your client's car wasn't parked there. He left it to go to the RV and then was arrested on his way to the RV and it certainly wasn't abandoned. In other words, this isn't a case where someone just leaves their car and it's sitting there and the police come across it or a property owner calls and says, hey, there's this random car on my property. I mean, this situation seems to squarely fall in subsection six. I agree. I agree, Your Honor, it does. But when you take a look at the language, it says the driver of such vehicle. If they wanted this section to apply to any and all circumstances, public or private, then they could have easily used the language A or any as they did in paragraph one through five. But counsel, that's a continuation of the sentence starting in D. So the way it reads is, vehicles may be towed under the following circumstances, dot, dot, dot, when the driver of such vehicle. The vehicle refers to the vehicle they're referring to for all of these policies. And the such vehicle language shows up in subsection one, where it says where any vehicle is left upon a bridge causeway or viaduct where such vehicle constitutes an obstruction to traffic. The such vehicle refers to the vehicle that may be towed, not the vehicle that's parked on public property, right? Your Honor, that is one interpretation of it. But another interpretation as well is that when a such vehicle as opposed and as it relates to paragraphs one through five. So you are correct. It has multiple translations to this. But counsel, how can it be read that way when they're independent? In other words, these aren't factor one, two, and three must be met, like in a statute that says, you know, to have a cause of action, you must do A, B, and C. These are independent bases in which to tow a car. You can tow it if one happens or if two happens or if three happens. And if that's the case, then how does six incorporate one, two, three, four, and five under the unique circumstances of those cases? Well, Your Honor, because they could have easily said, this could have easily- Two minutes remaining. Your Honor, it could have easily been read when the driver of a vehicle is taken into custody by the police department and the such vehicle would have thereby been left unattended. It could have easily been read that way. It can also be read when- Counsel. Yes, Your Honor. Counsel, this is Judge Carnes. Let's get real quick so the government can respond to it. Your argument on the guidelines issue about custody care or supervisory control. Yes, Your Honor. There are no facts to determine whether that enhancement applies. The court relied on the stipulation. However, the stipulation does not indicate that. Now, if you take a look at Note 5, it says, it gives an example of teachers, daycare providers, and babysitters, or other temporary caretakers. There's no evidence that any of that applies in this particular case. None of those types of relationships exist in this particular case. Did we know at the time of sentencing exactly how the defendant came to be with the victim that particular day? No, Your Honor. There are no facts in the record. Didn't the stipulated bench trial facts specifically state that your client gained the trust of the family in this case? Yes, it does, Your Honor. However, those are two different things. Well, I understand, but I'm merely asking that question. So, we know that there was a trust relationship. We also know that the mother, as I understand it, there's facts in the PSI and in the stipulated facts that the mother was sick in this case, correct? I believe so, Your Honor. Yes. Right. We also know that, at least as to the first incident, your client directed the victim to do what she ultimately did in this case. That's in the stipulated facts, is it not? I don't believe that's so, Your Honor. It doesn't say that he directed her to do this particular thing and persuaded her to do it? Your Honor, I have to review that again. Okay. You can do that in the rebuttal and then come back up here and say, but let's move on. We also know that the age difference was 13 for the victim and, I think, 48 or so or 44 or so for your client, right? That's correct, Your Honor. Yes. So, you have an adult with a child who gained the trust of the mother for a sick mother and who provided for that family with clothes, with food, with shelter, who then takes that child for a ride. You don't think that the adult has supervisory control under those circumstances as a temporary caretaker? Your Honor, no, I do not, Your Honor, because the facts doesn't indicate whether or not the mother allowed him to take the child or whether it was done on his own. There are no facts. You don't think we can infer that under the circumstances? In other words, there needs to be an express statement of so-and-so entrusted so-and-so with the care of the child? That has to be... Where does it say that in the guideline of the commentary? It does not, Your Honor. Right. So, you agree that it can be inferred from the circumstances? I believe that it could be inferred, Your Honor, but in this particular case, I don't believe so because of the fact that the note talks about type of relationship and that does not apply in this case. So, when you sit down and come back on rebuttal, take a look at docket entry 58 at page 3, where it states that your client, quote, pulled down her underwear and displayed her naked vagina so that he could produce a visual depiction of the victim engaging in a sexually explicit conduct. Okay? Yes, Your Honor. Thank you. All right. We'll hear now from Ms. Sider. May it please the Court, Jermaine Sider for the United States. The district court didn't clearly err in finding that Detective Betts had followed the police department's standard policy and procedure when he impounded Mr. Isaac's car. And this is why there's no Fourth Amendment violation and this court should affirm the district court's denial of the motion to suppress. The applicable provision here for governing the impoundment is paragraph 6 of the policy's toe provision, which for all the reasons that Your Honors have been pointing out, that is the provision that applies specifically to when the driver of a car is taken into police custody. Paragraph 8 just has no bearing here. Those apply to a situation where a car is parked or abandoned on private property. And this car was not abandoned. So, the definition, um, the policy defines abandoned car as a car that has no identifiable owner that has been disposed on public property in poor condition. And that is what the- Counsel, this is Robert Lutz. The slash between parked or abandoned, or parked and abandoned, is an or, right? Not an and. You would agree? Yes. So, was the car not in park when he left it and walked towards the RV? And again, that was done at the behest of Detective Betts, who wanted the defendant to leave the car, walk towards the RV, so that he can call and confirm it was him, right? It was parked. But I think in this instance, the and or, well, so, the definition of abandoned- So, Counsel, if it's parked and it's on private property, which I also think is undisputed in the record, then why is Counsel wrong that section 8 would not apply? Because it's a- they're talking about an abandoned car that's parked on private property. It says parked. The term abandoned- But, Counsel, you agree with me that the slash is an or. It says parked or abandoned on private property. It does. But those are- those are, um, similar- I think that's to imply not distinct situations, like, totally different situations, but similar situations. And- and I'm trying to point out the definition of abandonment in this policy is a vehicle that's been disposed on public property. And so, I think that's why here, in this paragraph, they made the distinction that because we're talking about private property, um, the policy is recognizing that you can have a car that's abandoned on private property. There's no doubt it says that, but- but what your opposing Counsel says is it also says here the car was, in fact, parked at the time he was arrested. So, why is the- why are the police not also required to, uh, comply with this particular provision in addition to, um, or- or as a substitute for subsection 6? Because I think the proper interpretation of parked is- is one that they're referring to a vehicle that has no disposable- no identifiable owner and is in poor condition, and it's been parked on private property. And that- that is- that is how that should be interpreted in- when you consider the context of just slashed and abandoned. And then also, you know, this provision, when you keep on looking at the provision, he's complaining that, uh, he didn't, uh, I believe in subsection C or subsection- the part where it says, um, should inform the owner agent that he or she may have the should have applied to him, and that's why he should have been given a chance to towed, but the owner agent doesn't refer to the owner agent of a vehicle. You're right that he did make that argument in his brief and below, but- but here he made the argument this morning that owner agent meant- meant the owner agent of the property, and here there's no evidence that the owner agent of the property was informed to give them the option to tow. That's correct. And it's still a violation of the policy, again, assuming that section applies, right? Assuming the section applies, they should have, yes, but this section just does not apply. And- and- and- and to your point, um, earlier, when the- the more specific situation is paragraph six, and it's clear that this is exactly on point when the driver of such a car is taken into policy by the- taken into custody by the police department, that's exactly what happened here. Counsel, just going back to Judge Luck's question on section eight, he- he started off his questions by asking you if parked, the slash means or, but you're- you seem to be arguing that abandoned is necessarily modifying parked in this case, which would suggest and. And I guess I'm just trying to make sure I understand your argument. Mm-hmm. I'm not arguing that abandoned- well, I- I'm not arguing that abandoned necessarily modifies parked, but I'm arguing that in the context of which parked is used, in the context of abandoned, it- it- it's not, you know, they're not saying a car- a car that's not abandoned, a car that's been abandoned. So I'm just saying we have to look at the context in which this term is used to- to interpret what they mean by parked. And here, abandoned, I mean, there- it suggests that they're talking about a car that has, you know, been left on- on public property in poor condition with no identifiable owner. And so when we're talking about private property, it's recognizing that a car can be abandoned on private property too. And- and so I think it's making a distinction when you look at the- that we recognize that we've defined abandoned vehicle as a car that's been disposed of on public property. But here, it can be- when we're talking about private property, it can be disposed of on private property as well. And- and that's what parked means. And here, his car, you know, he- this is nothing like a situation where you have any kind of disposal on a private property. Counselor, you want to turn to the guidelines issue? Yes, Your Honor. What about my question? I couldn't see- find anything. I know about the overall scheme, modus operandi, grooming, that sort of thing. Grooming, not just the daughter, but the mother as well, it seems like. Is there anything in the record that- that doesn't appear in the court's order or in the briefs about how the 13-year-old came to be in the defendant's Mercedes that very morning? No. No, there isn't. So, you just relied, I suppose, on the inference that since he had gained the trust of these people, she must have been entrusted to him by the mother? I think it's more of an entrustment by the child. I think you can infer an entrustment from the mother, but I don't think that's required to- for this- for this guideline to apply or to find that she was in his custody, care, supervisory control. So, she put herself in his custody or put herself in his care or put herself in his supervisory control? Yes. Counsel, what you're saying is- the simple fact is if he had care, custody, and supervisory control, not whether the mother gave him that control, not whether the child perceives it as control, but, in fact, whether he had those things at that time when it happened. Is that what your argument is? That is our argument based on the circumstances. And when you look at the commentary, the term entrusted is broad. It has no- it's not limited to who entrusts or if there's an express entrustment. It's just entrusted. And so, that can just- all this means is that you look at the circumstances and decide at that time is he- is the child in his custody, care, or supervisory control. I also want to point out real quick that if this is the only guideline error that we're talking about, just this two-level increase, and if we were- it's not clearly erroneous, but if it were clearly erroneous, it would be harmless because this two-level increase had no effect on the advisory guideline sentence of 960 months. With or without the two-level offense level increase, his total adjusted offense level would still be greater than 43. And so, it would be treated. And so, the total offense level would be a 43. And therefore, after, you know, after the criminal history, and yeah, it would still be a guideline sentence of 960 months. So, the error didn't affect the guideline sentence, and the sentence that the district court imposed was reasonable for the reasons that we explained in our brief. So, unless this court has any other questions. But so, counsel, that argument would apply if we're only talking about this one enhancement. We also have the pattern of activity enhancements. Correct. Correct. And it- yes, that argument was- And so, that would- if we were hypothetically to agree with him that both enhancements were in error, that your 43 argument would not hold water anymore, correct? Correct. If we were- if this court were to find that it was error to apply this two-level enhancement, and that it was error to apply either one of the pattern enhancements, then this harmless error argument would not apply. Well, if we agree with you on the custody enhancement, but disagree with you on the pattern enhancement, what would be the effect of that on the guideline range? I haven't calculated that out, but I mean, the guideline range would change. Okay. And that would apply to both, because that would be a 10- it would have to be different, because it's a 10- a 10- it's a 10-point difference. It's not precisely a 10-point difference, exactly a 10-point difference, because of the way the grouping rules work, but it would be a significant increase, and it would certainly affect- certainly affect the guideline range. His guideline range would be significantly lower without the pattern enhancement. I understand. Anything else, counsel? No, we can- unless this court has any other questions, the United States will rest on the brief. Thank you. Thank you, Ms. Sider. Mr. Taylor, you've got five minutes if you need it. Yes, Your Honor. Thank you. The court asked about the stipulated facts on page three, excuse me, where Ms. Isaacs persuaded and directed the victim to pull down her underwear. We would still argue, Your Honor, that that does not relate to any supervisory control in this, and we agree that he did direct her to do so, but whether or not he was in his care, custody, and supervisory control is another issue. If he's the only adult in the room, by a significant margin, and if he has gained the trust of the entire family, and he is the provider for that family, and he directs and persuades that person to do something, the victim to do something, how is that not at least supervisory control? Well, Your Honor, in this particular case, there's facts that he, you know, purchased food and received an RD. But not just because he was generous, but because this family was homeless and was panhandling. I mean, he was the provider for the family. I mean, certainly can infer those facts, can't we? Your Honor, I don't believe we can infer that he was the provider of the family. I believe we can infer that he provided some assistance to the family. As I understand it, they were homeless and were at a Wawa station on the side of a highway begging for money. And then they were now clothed, fed, and living in some sort of shelter as a result of him. Right? Yes, Your Honor. Okay. That is correct. I mean, maybe we're glossing over the fact that those are alternatives. Custody, care, or supervisory control. If a 48-year-old man is in a car with a 13-year-old girl whose family he knows and whom he knows, wouldn't she necessarily be in his care? Forget about custody or supervisory control. Somebody comes up, opens the door, and says, I'm going to kidnap this little girl. She's in his care, and it would be his responsibility to prevent her from being kidnapped, wouldn't it? In that instance, Your Honor, yes. I believe anyone would have that responsibility to do that. Okay. Then that's the answer, particularly when the application note says it ought to be broadly interpreted and ought to be interpreted to look to the actual relationship. She's in his care. End of discussion. Or at least, no clear error in the application. What am I missing? And I said 48. I mean 44. I understand, Your Honor. How are we doing? We do believe that the fact that there's age difference in this particular case, then that enhancement would apply in any and all cases where there is a wide age difference, and we would argue that it has to be based on a case-by-case basis. We understand. Anything else, Mr. Taylor? No, Your Honor. We note that you're CJA appointed. We appreciate you taking that appointment. We'll take that case under submission.